Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| JULIO MÉNDEZ BRUNO | | *REVISIÓN ADMINISTRATIVA* procedente de la División de Remedios Administrativos |
|---|---|---|
| Recurrente | | |
| v. | TA2026RA00136 | |
| DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN | | Solicitud de reconsideración #MA-291-25 |
| Recurrido | | |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

# SENTENCIA

En San Juan, Puerto Rico, a 15 de mayo de 2026.

Comparece la parte recurrente, Julio Méndez Bruno, por derecho propio, y nos solicita que revoquemos la *Respuesta de Reconsideración al Miembro de la Población Correccional*, emitida el 10 de marzo de 2026, notificada el día 16 del mismo mes y año, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación de Puerto Rico. Mediante dicho dictamen, el foro administrativo denegó la petición de reconsideración promovida por Méndez Bruno. En su consecuencia, no concedió días de bonificación adicional en el periodo del 23 de abril de 2011 al 23 de septiembre de 2022, por trabajo realizado por Méndez Bruno, estando este bajo supervisión de la Junta de Libertad Bajo Palabra.

Por los fundamentos que exponemos a continuación, se revoca el dictamen recurrido y se devuelve el caso al Departamento de Corrección y Rehabilitación con el fin de adjudicar las bonificaciones adicionales que correspondan. Veamos.

**I**

El 29 de diciembre de 2025, Julio Méndez Bruno (Méndez Bruno o parte recurrente) presentó una *Solicitud de Remedio Administrativo*[1] ante la División de Remedios Administrativos (DRA) del Departamento de Corrección y Rehabilitación (DCR o parte recurrida). Méndez Bruno solicitó acreditación de bonificación a su sentencia, por trabajo realizado en el periodo del 23 de abril de 2011 al 23 de septiembre de 2022, estando bajo supervisión de la Junta de Libertad Bajo Palabra. Alegó que con dichas bonificaciones se da por cumplida su sentencia.

El 29 de enero de 2026, la DRA emitió una *Respuesta del Área Concernida/Superintendente*[2], recibida por Méndez Bruno el 23 de febrero de 2026. En dicha respuesta, expresó que "[s]e dio conocimiento sobre petición del miembro de la población correccional a Programa de Comunidad de Arecibo para acción pertinente. En espera de respuesta por parte de dicho Programa para poder canalizar la solicitud del confinado."

En desacuerdo, el 9 de marzo de 2026, Méndez Bruno presentó otra *Solicitud de Remedio Administrativo*,[3] en la que solicitó reconsideración. Alegó que presentó evidencia de los trabajos donde estuvo laborando en Puerto Rico y en el estado de Pensilvania desde el año 2011 hasta el 2022. Adujo que con dicha bonificación su sentencia se daría por cumplida.

El día siguiente, la DRA emitió su *Respuesta de Reconsideración al Miembro de la Población Correccional*[4]. En dicho dictamen denegó la petición de reconsideración de Méndez Bruno. Indicó que Méndez Bruno no reunió los criterios para la concesión

---

[1] Página 1 del Apéndice 3 en la Entrada Núm. 1 del Caso Núm. TA2026RA00136 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] Páginas 6 y 7 del Anejo en la Entrada Núm. 3 del Caso Núm. TA2026RA00136 en el SUMAC.
[3] Página 1 del Apéndice 3 en la Entrada Núm. 1 del Caso Núm. TA2026RA00136 en el SUMAC.
[4] Apéndice 2 en la Entrada Núm. 1 del Caso Núm. TA2026RA00136 en el SUMAC.

de bonificación adicional. Ello, por no cumplir con el plan laboral establecido por su social, mientras se encontraba bajo la supervisión de Libertad Bajo Palabra del Departamento de Corrección de Pensilvania.

Inconforme, el 24 de marzo de 2026, la parte recurrente presentó el recurso de epígrafe y señaló el siguiente error:

> La agencia administrativa erró al concluir que no exist[í]a evidencia, y por tanto la decisi[ó]n constituye un acto arbitrario irrazonable e injusto, revisable por este Honorable Tribunal.

Examinado lo anterior, el 27 de marzo de 2026, emitimos y notificamos una *Resolución*, en la que dispusimos que la parte recurrida tendría treinta (30) días para presentar su alegato. Asimismo, que tendría un término de diez (10) días para elevar copia certificada del expediente administrativo correspondiente al caso de epígrafe.

El 6 de abril de 2026, la parte recurrida presentó dicho expediente administrativo, junto a una *Moción en Cumplimiento de Resolución*.

Así las cosas, el 22 de abril de 2026, la parte recurrida presentó una *Solicitud de Término Adicional*, en la que nos solicitó un término adicional de quince (15) días para responder al recurso presentado por el recurrente. Considerada la referida petición, emitimos una *Resolución*, mediante la cual concedimos la prórroga solicitada.

En cumplimiento con nuestra orden del 24 de abril de 2026, la parte recurrida presentó un escrito titulado *Escrito en Cumplimiento de Resolución* el 8 de mayo de 2026. En esencia, la parte recurrida alegó que la documentación presentada por el recurrente reveló que este pudiere ser elegible para bonificación para el periodo del 10 de noviembre de 2018 al 18 de noviembre de 2019. Por lo que solicitó que se devuelva el caso al DCR para que adjudique

las bonificaciones que sean procedentes durante el mencionado periodo.

Asimismo, en cuanto a las bonificaciones reclamadas de los años 2011 al 2015, sostuvo que no existe evidencia suficiente necesaria para conceder bonificaciones adicionales por esos años. Adujo que, por tal razón, el recurrente no es elegible para bonificación en dicho periodo. Ello, a base de una comunicación emitida el 5 de mayo de 2026, por la Sección de Remedios Administrativos del DCR, dirigida a la Oficina del Procurador General de Puerto Rico, la cual anejó.

De acuerdo con la mencionada comunicación, la Sección de Remedios Administrativos investigó el caso en cuanto a la solicitud del recurrente. Expresó que, según la Sra. Eva Cruz Figueroa, Supervisora Regional, de la Oficina de Programas y Servicios Región Sur, se "evaluar[á]n los datos suministrados para adjudicar las bonificaciones adicionales que correspondan y estén debidamente evidenciadas, dejando sin efecto el acuerdo tomado en cuanto a bonificación adicional Ley 166-2022 en la reunión del Comité de Clasificación y Tratamiento realizado el 19 de octubre de 2022."[5]

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

## A

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que cuentan con vasta experiencia y pericia para atender aquellos asuntos que la Asamblea Legislativa les ha

---

[5] Anejo 1 de la Entrada Núm. 7 del Caso Núm. TA2026RA00136 en el SUMAC. Mediante el referido *Acuerdo del Comité de Clasificación y Tratamiento* (Página 6 del Apéndice 3 en la Entrada Núm. 1 del Caso Núm. TA2026RA00136 en el SUMAC) el DCR dispuso que "[n]o se conceden días de B/A en periodo del 23 [de] abril [de] 2011 al 23 [de] septiembre [de] 2022." Ello, bajo el fundamento de que por no surgir evidencia de labores, se procedió a evaluar en ausencia, toda vez que [Méndez Bruno] se encontraba en J[unta] [de] L[ibertad] B[ajo] P[alabra].

delegado. *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 116-117 (2022). Es por ello, que tales determinaciones gozan de una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *J.H.V. v. Negociado de la Policía de Puerto Rico*, res. 12 de diciembre de 2025, 2025 TSPR 139; *Transp. Sonnell, v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215-216 (2012).

No obstante, la norma antes reseñada tampoco es absoluta. Al respecto, el Tribunal Supremo ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *J.H.V. v. Negociado de la Policía de Puerto Rico*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754 (2024).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial. Sobre el particular, detalló lo siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. [Cita omitida] Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 127 (2019); *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *OEG v. Martínez Giraud*, supra.

Bajo este supuesto, la sección 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco rector aplicable a la revisión judicial de las determinaciones de las agencias administrativas". *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). De este modo, la intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos que la agencia realizó están sostenidas por la evidencia sustancial que obra en el expediente administrativo, visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, res. el 27 de marzo de 2025, 2025 TSPR 33, citando a *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012); *Rolón Martínez v. Supte. Policía,* supra, págs. 35-36.

Por otro lado, las conclusiones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán dar peso y deferencia a las interpretaciones que la agencia realice respecto a aquellas leyes y reglamentos que administra. *Rolón Martínez v. Supte. Policía,* supra.

En fin, el Tribunal Supremo ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG v. Martínez Giraud*, supra, pág. 90.

De este modo, el Alto Foro ha expresado que el criterio administrativo no podrá prevalecer en aquellas instancias en que la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, considera que "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 91. Ello, pues, a fin de cuentas, "la interpretación de las leyes es una tarea inherentemente judicial". *J.H.V. v. Negociado de la Policía de Puerto Rico*, supra.

**B**

La Sección 19 del Artículo VI de nuestra Constitución establece que será política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. ELA, LPRA, Tomo I. A raíz de ello, el Artículo 5, inciso f del Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, conocido como el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011,* 3 LPRA Ap. XVIII, Art. 5(f) (Plan de Reorganización

Núm. 2-2011), le reconoce al DCR la facultad y deber de "ampliar los programas de educación y trabajo para que impacten a toda la población correccional que interese participar y asegure la aplicación correcta de los sistemas de bonificación por trabajo y estudio que permitan las leyes aplicables".

Conforme a ello, los Artículos 11 y 12 del Plan de Reorganización Núm. 2-2011, 3 LPRA Ap. XVIII, Art. 11 y 12, establecen el modo en que se deben computar las bonificaciones, ya sea por buena conducta y asiduidad o por estudio, trabajo y servicios. Ahora bien, originalmente, el Artículo 11 disponía que las bonificaciones solo aplicaban a personas sentenciadas previo a la vigencia del Código Penal de 2004, ya que el mismo eliminó las bonificaciones automáticas por buena conducta y asiduidad. Debido a ello, para efectos de la aplicación de las bonificaciones, la población penal se dividió en: (1) aquellos sentenciados bajo el Código Penal de 1974, los cuales cuentan con derecho a las bonificaciones; y (2) en los sentenciados bajo el Código Penal de 2004, los cuales no tienen derecho a las bonificaciones por buena conducta y asiduidad. Véase, Exposición de Motivos de la Ley Núm. 87-2020.

Ante las incongruencias de dicho esquema de bonificaciones, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 87-2020, para enmendar el Artículo 11 del Plan de Reorganización Núm. 2-2011, *supra*, con el fin de extenderle a toda la población correccional la oportunidad de solicitar la aplicación de las bonificaciones por buena conducta y asiduidad, sin distinción del Código Penal mediante el cual fueron sentenciados. La mencionada enmienda indicaba lo siguiente:

> Toda persona sentenciada a cumplir término de reclusión en cualquier institución, antes de la vigencia del Código Penal de Puerto Rico de 2004, que esté disfrutando de un permiso concedido a tenor con lo dispuesto en este Plan o que se encuentre recluida en cualquier entidad gubernamental o

privada como parte de un programa de rehabilitación o disfrutando de libertad bajo palabra, que observare una buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate o desde que se concede la libertad bajo palabra. Exposición de Motivos de la Ley Núm. 87-2020.

No obstante, nuestra Asamblea Legislativa nuevamente enmendó el mencionado Artículo para reiterar que las bonificaciones también les aplicaban a aquellas personas convictas que estuvieren disfrutando de los beneficios de libertad bajo palabra, puesto que no se estaban concediendo. Véase, Exposición de Motivos de la Ley Núm. 66-2022. En particular, la Legislatura expresó que la Rama Ejecutiva había interpretado que los programas del DCR y de la Junta de Libertad Bajo Palabra (JLBP) eran distintos y mutuamente excluyentes y que, a diferencia de las instituciones correccionales, la JLBP no tenía una estructura administrativa para clasificar ni proveer tratamiento a las personas convictas liberadas. *Íd.* Por consiguiente, se aclaró que:

> Estando la Junta de Libertad Bajo Palabra adscrita al Departamento de Corrección y Rehabilitación, no debe existir impedimento alguno para que se maximicen los recursos y se cumpla con el claro mandato legislativo de que las personas acogidas al privilegio de libertad bajo palabra también puedan reducir sus sentencias utilizando el mecanismo de bonificaciones. Exposición de Motivos de la Ley Núm. 66-2022.

En vista de ello, mediante la Ley Núm. 66-2022, nuestra Asamblea Legislativa incluyó un párrafo aclaratorio al Artículo 11 del Plan de Reorganización Núm. 2-2011, *supra*, el cual dispone que:

> Las rebajas de términos de sentencias dispuestas en este Artículo por buena conducta y asiduidad, aplicarán a toda persona sentenciada a cumplir término de reclusión bajo cualquier Código Penal de Puerto Rico o delito cometido bajo cualquier ley penal especial que en sus disposiciones no las excluya, independientemente se encuentre dentro de una institución correccional o esté cumpliendo el restante de su sentencia de reclusión a través de un permiso concedido a tenor con lo dispuesto en este Plan o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación o se encuentre disfrutando de libertad bajo palabra. 3 LPRA Ap. XVIII, Art. 11.

En cuanto al Artículo 12 del Plan de Reorganización Núm. 2-2011, *supra*, el cual establece lo relacionado a las bonificaciones

por trabajo, estudio o servicios, antes de ser enmendado por la Ley Núm. 66-2022, solo autorizaba al Secretario o Secretaria del DCR a conceder las bonificaciones. Sin embargo, la Ley Núm. 66-2022 enmendó el aludido Artículo para aclarar que las bonificaciones adicionales aplicarán a las personas convictas independientemente bajo qué Código Penal se hubiese sentenciado. Igualmente, debido a que no se estaba aplicando a aquellas personas convictas que se encontraban en libertad bajo palabra, incluyeron a la persona Presidenta de la JLBP como funcionaria autorizada para conceder las bonificaciones por estudio y trabajo.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En su *Recurso de Revisión Administrativa*, el recurrente alega, en esencia, que el DCR erró al concluir que no existía evidencia para la concesión de las bonificaciones adicionales solicitadas y, por tanto, considera que la decisión de no concederle la bonificación por trabajo constituye un acto arbitrario, irrazonable e injusto.

Ahora bien, en fecha posterior a la presentación del recurso de revisión, la parte recurrida, junto a su *Escrito en Cumplimiento de Resolución*, anejó una comunicación emitida por la Sección de Remedios Administrativos del DCR, dirigida a la Oficina del Procurador General de Puerto Rico.

En dicha comunicación, la Sección de Remedios Administrativos del DCR indicó que, para otorgar bonificaciones adicionales al recurrente, este debe entregar al área sociopenal documentos a su nombre, tales como formulario W-2, planillas, cheques cancelados y/o talonarios que contengan nombre de la empresa, periodo de trabajo y sueldo devengado. Expresó que la Supervisora Regional, Oficina de Programas y Servicios Región Sur, informó que se "evaluar[á]n los datos suministrados para adjudicar

las bonificaciones adicionales que correspondan y estén debidamente evidenciadas, dejando sin efecto el acuerdo tomado en cuanto a bonificación adicional Ley 166-2022 en la reunión del Comité de Clasificación y Tratamiento realizado el 19 de octubre de 2022."[6]

Sobre el particular, la parte recurrida sostiene que la documentación anejada revela que el recurrente pudiere ser elegible para bonificación para el periodo del 10 de noviembre de 2018 al 18 de noviembre de 2019. En cambio, aduce que no existe evidencia suficiente necesaria para conceder bonificaciones adicionales por los años 2011 al 2015.

Sin embargo, lo que es expresado en la comunicación antes mencionada, es que la Oficina de Programas y Servicios Región Sur evaluará los datos suministrados para adjudicar las bonificaciones adicionales que correspondan. Ello no significa que sea una adjudicación final sobre las bonificaciones que proceden y las que no. Por el contrario, lo que se dispone es que primero deberán ser evaluadas para luego adjudicar las que correspondan. Por lo que es necesario realizar una evaluación de la totalidad del expediente para emitir una determinación en cuanto a ello.

Una vez se notifique dicha determinación al recurrente, de estar inconforme con la respuesta final del DCR, este puede solicitar la reconsideración dentro del término aplicable para ello. De estar todavía en desacuerdo, luego de la determinación sobre dicha reconsideración por parte de la agencia, entonces el recurrente tiene a su disposición el recurso de revisión judicial frente a este Tribunal de Apelaciones.

Conforme a la comunicación anejada, y según nos solicita el DCR, procede revocar el dictamen recurrido y devolver el caso al

---

[6] Anejo 1 de la Entrada Núm. 7 del Caso Núm. TA2026RA00136 en el SUMAC.

DCR, a los efectos de que se evalúen los datos suministrados en su totalidad para la adjudicación de las bonificaciones adicionales que correspondan. Una vez el DCR lleve a cabo la evaluación correspondiente, procede que se le notifique la determinación a la parte recurrente.

**IV**

Por los fundamentos que anteceden, se revoca el dictamen recurrido y se devuelve el caso al DCR con el fin de adjudicar las bonificaciones adicionales que correspondan.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones